IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

FRANCES E. KLINE,

                     Plaintiff,                    Case No. 3:09 CV 283

    -vs-

                                                                 <u>MEMORANDUM OPINION</u>

CHECKER NOTIONS COMPANY, INC.

                     Defendant.

KATZ, J.

In this action, Plaintiff Frances Kline brings claims against her former employer, Defendant Checker Notions Company, Inc. She claims that Defendant violated the Family and Medical Leave Act of 1993, 29 U.S.C. Sec. 2611 et seq. ("FMLA"), in discharging her. Defendant now moves for summary judgment (Doc. 37). The motion will be granted.

**I. Background**

The facts will be summarized here only briefly. Plaintiff was employed by Defendant from 1981 until August 14, 2008. On August 12, 2008, at 8:32 AM, thirty-two minutes after her shift began, Plaintiff telephoned Defendant's Human Resources Manager, George English, to report that she would not be coming to work that day. At deposition, Plaintiff testified as follows regarding that conversation: "I told George that I had injured my back the previous day at work and was on pain medication and I was still in severe pain and unable to come in and I would be going to the doctor as soon as I could get a hold of my doctor's office." (Doc. 31 ["Kline Depo."] at 27). The parties dispute what was said during the remainder of that conversation, and specifically whether English advised Plaintiff that she had violated company policy by not providing notice of her absence prior to the beginning of her shift. That dispute is not relevant for present purposes, and the Court will proceed on the assumption that Plaintiff's account is truthful.

Later that same day, Plaintiff was examined by her physician, Dr. Victor Ricker. Ricker prescribed Plaintiff the painkiller Vicodin and had Plaintiff undergo a CT scan to check for kidney stones. This was the extent of Plaintiff's contact with Dr. Ricker regarding her back pain, for Plaintiff's CT scan was negative for kidney stones and she had no further appointments with him. (Kline Depo. at 34-36).

On the following morning, August 13, 2008, Plaintiff called English shortly after 8:00 AM to inform him that she would again not be coming into work. She left the following voice message on English's phone: "Hello, George, this is Fran. I just wanted to let you know that I was not going to be in today either, and I guess you'd probably have to take these as vacation because I have no idea how much time I have left otherwise. Bye." (Kline Depo. at 40).

Plaintiff again phoned in sick the next day, August 14, 2008. She called English at 9:27 AM and left the following voice message: "Hi, George, this is Fran. I'm not coming in today again. I'll let you know about tomorrow. Bye." (Kline Depo. at 44). That same morning, however, English called Plaintiff and informed her that she was being terminated for her failure, for three days in a row, to report that she would be absent from work in advance of her shift, in violation of company policy.

Beginning August 18, 2008, after her discharge, Plaintiff began visiting a chiropractor, Dr. Robert Riley. Plaintiff attended therapy sessions with Dr. Riley 2-3 times per week, for over a month. Kline's treatment included manipulation and manual therapy technique.

**II. Summary Judgment Standard**

Pursuant to Federal Civil Rule 56(c), summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of

law." *Id*. When considering a motion for summary judgment, a court must draw all inferences from the record in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, a court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

**III. Discussion**

The FMLA states that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise any right provided [by this Act]." 29 U.S.C. § 2615(a)(1). An employer may violate this provision by interfering with an employee's assertion of rights under the act or by retaliating against an employee for exercising her FMLA rights. In this case, Plaintiff asserts both theories.

*A. Interference Claim*

Plaintiff alleges that Defendant interfered with her exercise of FMLA rights by discharging her based on absences that were protected by the FMLA. Specifically, Plaintiff claims that her absences were protected by the provision of the FMLA providing for unpaid leave where a qualifying employee has "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D).

To prevail on a FMLA interference claim, a plaintiff must establish that (1) she is an "[e]ligible employee," 29 U.S.C. § 2611(2); (2) the defendant is an "[e]mployer," 29 U.S.C. § 2611(4); (3) the employee was entitled to leave under the FMLA, 29 U.S.C. § 2612(a)(1); (4) the employee gave the employer notice of her intention to take leave, 29 U.S.C. § 2612(e)(1); and (5)

3

the employer denied the employee FMLA benefits to which she was entitled.  *Cavin v. Honda of America Manufacturing, Inc.*, 346 F.3d 713, 719 (6th Cir. 2003).

Only the third and fourth elements are at issue in this case.  Defendant contends that undisputed facts show that Plaintiff did not have a  "serious health condition" and did not provide proper notice of her intention to take leave to her employer.  The Court finds both arguments well-taken.

**1. "Serious Health Condition"**

A "serious health condition" is defined in the FMLA as "an illness, injury, impairment, or physical or mental condition that involves -- (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider."  29 U.S.C. § 2611(11).   There is no claim in this case that Plaintiff was subject to "inpatient care" for her condition, which means that she must show that she was subject to "continuing treatment by a health care provider."  As is relevant here, "continuing treatment by a health care provider" is defined in the applicable regulations as "[a] period of incapacity of more than three consecutive, full calendar days, and any subsequent treatment or period of incapacity relating to the same condition" that also involves  "[t]reatment two or more times, within 30 days of the first day of incapacity . . . by a health care provider" or "[t]reatment by a health care provider on at least one occasion, which results in a regimen of continuing treatment under the supervision of the health care provider." 29 C.F.R. § 825.115(a).  The requirement of "treatment by a health care provider" means "an in-person visit to a health care provider."  *Id*.

"Incapacity" under the FMLA "means that a "health care provider" has determined that, in his or her professional medical judgment, the employee *cannot* work (or could not have worked)

*because of* the illness." *Olsen v. Ohio Edison Co.*, 979 F.Supp. 1159, 1166 (N.D.Ohio 1997) (emphasis in original). This means that an FMLA plaintiff cannot simply rely on his own testimony or the testimony of a non-expert as to his incapacity. Instead, a plaintiff must produce "evidence showing that a 'health care provider' made a professional assessment of his condition and determined, based on that assessment, that an extended absence from work was necessary." *Id*. Plaintiff cannot meet that burden in this case because there is no evidence in the record indicating that Dr. Ricker found that an extended absence from work was necessary for Plaintiff. Instead, it is undisputed that Dr. Ricker never provided Plaintiff with documentation indicating an incapacity to work. (Kline Depo. at 33). Dr. Ricker's notes, which are in the record, show that he only prescribed medication for her back pain. (See Doc. 38, Exh. 4). He did not supervise a "regime of continuing treatment" for Plaintiff beyond writing a prescription, and did not refer her to any other health care provider. (Kline Depo. at 35-36).

Plaintiff argues, however, that her chiropractor, Dr. Riley, did find that Plaintiff was required to miss work. But chiropractors only qualify as "health care providers" under the FMLA if their treatment consists of "manual manipulation of the spine to correct a subluxation as demonstrated by X-ray to exist." 29 C.F.R. § 825.125(b)(1); *Olsen*, 979 F.Supp. 1159, 1166. In this case, Dr. Riley's notes indicate clearly that he did not diagnose a subluxation in Plaintiff. (Doc. 38, Exh. B at 9).[1]

---

[1] Even if the Court were to conclude that Dr. Riley was a "health care provider" under the FMLA, however, it would not affect the outcome. Dr. Riley's "testimony" that Plaintiff was unable to work from August 10, 2008, through September of that year is contained in an application for unemployment benefits prepared by Plaintiff. This purported expert testimony is not admissible for a whole host of reasons: it is contained in an unauthenticated document; it is unsworn hearsay that does not fall within any exception; it does not appear to be based on Dr. Riley's personal knowledge (it is undisputed that Dr. Riley did not examine Plaintiff until August 18, making the

**2. Notice**

The Court also finds that Plaintiff did not provide sufficient notice to her employer of an FMLA-qualifying condition.

"[T]o invoke the protection of the FMLA, an employee must provide notice and a qualifying reason for requesting the leave." *Brohm v. JH Props., Inc.*, 149 F.3d 517, 523 (6th Cir.1998). But "[a]n employee does not have to expressly assert his right to take leave as a right under the FMLA." *Hammon v. DHL Airways, Inc.*, 165 F.3d 441, 450 (6th Cir.1999); see 29 C.F.R. §§ 825.302(c), 825.303(b). Rather, "an employee gives his employer sufficient notice that he is requesting leave for an FMLA-qualifying condition when he gives the employer enough information for the employer to reasonably conclude that an event described in the FMLA § [2612(a)(1)] has occurred." *Hammon*, 165 F.3d at 451; see also 29 C.F.R. § 825.303 (b) ("An employee shall provide sufficient information for an employer to reasonably determine whether the FMLA may apply to the leave request.").

The question of proper notice under the FMLA is one of mixed law and fact. "Although it is within the province of the jury to determine the facts of the notice given, it is for the court to determine whether those facts are sufficient reasonably to give an employer notice as required by the FMLA." *Cavin*, 346 F.3d 713, 723.

In this case, undisputed facts show that Plaintiff did not give her employer reasonable notice. Plaintiff initially indicated, in her August 12, 2008, phone call, that she had injured her

---

basis of his conclusion that she was unable to work from August 10 on unclear); Dr. Riley has not been disclosed as an expert witness in this case; and there is no evidence in the record indicating that his "opinion" satisfies the requirements for the admissibility of expert testimony pursuant to Federal Rule of Evidence 702.

back; was in severe pain; was unable to come into work that day; and planned to schedule a doctor's appointment. Construed most favorably to Plaintiff, this information would have put a reasonable employer on notice that, depending on the result of her doctor visit, Plaintiff might require FMLA leave in the near future. It would not have put her employer on notice that she now qualified for FMLA leave, because Plaintiff provided no information in this initial call that would indicate that she was then subject to inpatient care or continuing treatment by a health care provider. Instead, she indicated that she was self-medicating at the present time but hoped to be evaluated by a health care provider soon. Thus, Plaintiff's absence on August 12 was not of the type the FMLA was intended to cover. Cf. 29 C.F.R. § 825.303 (b) ("Calling in 'sick' without providing more information will not be considered sufficient notice to trigger an employer's obligations under the Act.").

Plaintiff's subsequent phone calls did not provide sufficient notice either. Indeed, she did not even mention health problems in these phone calls, a fact that would have led a reasonable employer to assume that these absences were not based on any medical reason. These calls did not allude at all to any FMLA-qualifying condition, but instead indicated that she was taking "vacation" time .(Kline Depo. at 40). Because undisputed evidence shows that Plaintiff did not place her employer on notice of an FMLA-qualifying condition, Defendant is entitled to judgment as a matter of law as to Plaintiff's FMLA interference claims.

### B. Retaliation Claim

Plaintiff also pursues a retaliation theory of FMLA liability. FMLA retaliation claims are analyzed under the familiar *McDonnell Douglas* burden-shifting framework. *Edgar v. JAC Prods*., 443 F.3d 501, 508 (6th Cir. 2006). To establish a *prima facie* case of prohibited FMLA

retaliation, a plaintiff must show that (1) she availed herself of a protected right under the FMLA by notifying the defendant of her intent to take leave, (2) she suffered an adverse employment action, and (3) that there was a causal connection between the exercise of her rights under the FMLA and the adverse employment action. *Id*. If the plaintiff makes out a *prima facie* case, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the plaintiff's discharge. *Skrjanc v. Great Lakes Power Service Co.*, 272 F.3d 309, 315 (6th Cir. 2001). If the defendant articulates such a reason, then the plaintiff has the burden of showing that the articulated reason is in reality a pretext to mask discrimination. *Id*.

For the reasons stated above, Plaintiff cannot show that she availed herself of a right protected under the FMLA, or that she gave proper notice of her intention. This Court therefore finds that she cannot make out a *prima facie* case of FMLA retaliation, and there is thus no need to evaluate the sufficiency of Defendant's business justification for terminating Plaintiff or any issues of pretext.

**IV. Conclusion**

For the foregoing reasons, Defendant's motion for summary judgment (Doc. 37) is granted, and the case closed.

IT IS SO ORDERED.

                                                      s/ *David A. Katz*
                                                      DAVID A. KATZ
                                                      U. S. DISTRICT JUDGE